## The Zion Church of the Evangelical Association of North America *v.* Adam H. Light, Appellant.

*Church law—Right of de facto trustees to maintain trespass.*

Where trustees of a church have been legally elected and as such hold their office, no others having been appointed to succeed them, they have authority, as the body legally constituted to represent the church, to institute and maintain an action of trespass for the negligent burning of the church building.

The courts in such an action will not inquire into the ecclesiastical standing of the trustees nor as to their relation to the general conference of the religious denomination to which they belong or have belonged.

*Actions—Trespass—Pleading—Striking off special plea.*

The action being trespass, it is not error for the court to strike off a special plea in bar previously filed by permission; the proper plea being not guilty, the matter set forth in the special plea is admissible, if at all, under the general issue.

Reargued March 8, 1898.   Appeal, No. 16, March T., 1896, by defendant, from judgment of C. P. Lebanon Co., Dec. T., 1893, No. 119, on verdict for plaintiff.   Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ.   Affirmed.

Trespass.   Before EHRGOOD, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $300.   Defendant appealed.

*Errors assigned* were (1) in striking off the plea in bar, setting forth matter in the nature of accord and satisfaction, filed by permission of court, from the record, on motion of plaintiff. (2) In overruling offer of defendant to file a release from the Evangelical Association to himself, in the case.   (3) In rejecting an offer by the defendant of a release from the Evangelical Association of North America by John J. Esher, bishop and a member of the litigating committee.   (4) In rejecting an offer of testimony on the part of the defendant to prove by a witness on the stand that he was the secretary of the conference of the Evangelical Association of North America which met at Potts-

town in March, 1895; that that conference was the only annual conference and was the conference that adhered to the Indianapolis conference in 1891. That this property is by church law under the control of this conference. That the bishop is the president of the Evangelical Association of North America, that he was authorized by resolution of the conference to execute a release to defendant in this suit for the damages which the association had sustained by reason of the destruction by fire by the defendant and to settle the same; that witness was present and saw the president of the Evangelical Association of North America sign and seal this release and duly acknowledge it as such president, and that he attested it as secretary of the conference and as a witness and that he was instructed so to do by the conference; and also that he was secretary of the Evangelical Association of North America. (5) In rejecting the following offer of testimony made on the part of defendant: "We propose to prove that the witness, who was at the time of the institution of this suit, a minister in the United Evangelical Association of North America, fills a station from the Allentown conference. That he is an adherent to the Philadelphia conference of 1891 and that he is one of the trustees of this corporation and assisted in bringing this suit and is hostile to the Indianapolis conference." (6) In rejecting an offer on the part of defendant to prove the same as to all the other five trustees. (7) In rejecting the following offer of testimony made on the part of defendant: "Now then we propose to prove further that no other trustees have as yet been appointed by the Evangelical Association of North America or the members,—no trustees have as yet been appointed by the conference which have authority to appoint them or the members who may have authority to appoint them. We also further propose to prove that this church is within the district of the Pottstown conference; that all church authority must emanate from that conference; that ministers have been appointed by the Allentown conference, a conference hostile to the Indianapolis and Pottstown conference, who have officiated and held services in this church."

*John Benson*, with him *B. M. Strouse*, for appellant.—Under the provisions of the original deed of trust, the charter and the discipline of the association, the plaintiff trustees ceased to be

1898.]                Arguments—Opinion of the Court.

the trustees of the property of the said association; and as a consequence the office of trustees became vacant, subject to be again filled by the proper authority: Keecker v. Shirey, 163 Pa. 534; Roshi's Appeal, 69 Pa. 462; Winebrenner v. Colder, 43 Pa. 244.

It was error to strike off the special plea. The practice in this respect is still as it was before the passage of the act of May 25, 1887: Stephen on Pleading, 63; Brightly's Troubat and Haly's Practice, secs. 670–674; Bauer v. Roth, 4 Rawle, 82.

*Thomas H. Capp*, with him *George B. Schock*, for appellee.—The act of 1887 is mandatory. The only plea in the action of trespass shall be "not guilty:" Act of May 25, 1887, P. L. 271.

The law of Pennsylvania requires that property conveyed or held by a religious corporation shall be subject to the control and disposition of the lay members of the church. The history of the legislation and the several enactments are familiar to us all and need no discussion. The courts will not grant charters without compliance with this legislation: St. Paul's Church, 30 Pa. 152; Alexander Presbyterian Church, 30 Pa. 154.

The trustees are still in office; no effort has ever been made to oust them. That they were lawfully elected is not questioned; no other trustees or successors have been elected by the members of this corporation or any one else. Can their eligibility, rights, duties and liabilities be inquired into in this proceeding? We think not: Bank v. Mining Co., 5 Sawyer (U. S.), 255.

When a suit is commenced and prosecuted by a corporation, by direction of its officers de facto—no other persons claiming a right to act as its officers—the defendant cannot be permitted to show, for the purpose of procuring the dismissal of the suit, that those officers were illegally elected.

The general rule of law is that the regularity and validity of the organization of a corporation, effected under color of its charter, cannot be impeached in any collateral proceeding: Water Co. v. De Kay, 36 N. J. Eq. 548.

OPINION BY BEAVER, J., April 25, 1898:

The plaintiff, a corporation duly created under the laws of

this commonwealth, brought an action of trespass against the defendant to recover damages for the burning of the church building belonging to it. It was admitted at the trial below that the five trustees, under whose direction the suit was brought, had been duly elected under the charter granted by the court of common pleas of Lebanon county on the 14th of April, 1879. The defendant admitted his liability for the injury and there was practically no dispute as to the value of the building which constituted the measure of damages. The sole contest was as to the right of the trustees representing the plaintiff corporation to maintain the action and to receive the money which might be recovered thereunder.

On the 2d day of March, 1849, Joseph Kreiter et Ux., by their indenture of that date, conveyed to John Miller, Jacob Peter and Martin Wingert, and their successors (trustees, in trust for the uses and purposes hereinafter mentioned and declared) a certain lot or piece of land, in the said indenture specifically described, containing thirty-one perches and a half, neat measure, forever, in trust that the trustees and their successors "shall erect and build or cause to be erect and build thereon a house or place of worship for the use of members of the Evangelical Association in the United States of America, according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers and preachers of the said Association, by their General Conference in the United States of America," and upon the further trusts in the said deed specifically described.

The charter of the corporation provides as follows : " Article IV. The officers of this congregation shall consist of a board of trustees of five persons chosen from its members in such manner, time and place as shall be specified in its by-laws or the discipline of the Evangelical Association. The said trustees shall have the sole management and control of all the property of the congregation, subject to the present or any future provision of said discipline and the provisions of the annual Conference and of the law of the state." "Article VIII : All vacancies occurring in the board of trustees shall be filled and all the business of the congregation shall be conducted in strict conformity to the discipline of said Evangelical Association and the provisions of the annual Conference in whose

bounds the property is situated." "Article IX: All convey-ances of property to this congregation shall be deeded in trust and said property shall be used, kept, maintained and disposed of for the use and benefit of the ministry and membership of the Evangelical Association of North America; and any real estate of said Association held in trust for said Evangelical Association shall be sold and conveyed by the said trustees in the corporate name thereof, when the said trustees shall be authorized to do so by the annual Conference in whose bounds said real estate is situated."

It does not affirmatively appear that any formal transfer of the property conveyed by Kreiter and wife, by the deed of the 2d of March, 1849, to the trustees therein named was ever made to the corporation, but the deed to the trustees was, in effect, a deed to the congregation and, when the congregation became incorporated, its property became vested in the corporation, without formal transfer. In Brendle v. German Reformed Congregation, 33 Pa. 415, it was held that "that act (1731) gave to religious societies legal capacity to hold and, therefore, the conveyance to their trustees constituted an executed legal estate in the congregation itself. The use of the medium of trustees was mere matter of form and does not at all make this a case of a charitable use. Such trustees seldom, if ever, convey to successors, but the title in their name is treated as the title of the congregation, to be used by the congregation, at their discretion for such purpose as the law allows."

There is no denial that the trustees, under whose direction this suit was brought, were in the actual possession of the property—such possession as we have seen was under a legal title. It was certainly under color of title sufficient to authorize them to maintain an action of trespass. Upon what did the defendant rely to defeat the right of recovery? This will be probably best ascertained by a consideration of his several specifications of error seriatim.

The first relates to the action of the court in striking from the record a special plea in bar previously filed by permission. If any error were committed by the court in this behalf, it was in allowing the special plea to be filed and not in directing it to be stricken from the record. Section 7 of the procedure act of May 25, 1887, abolishes special pleading and provides that

"the only plea in the action of trespass shall be 'not guilty.'" Anything set forth in the so-called special plea in bar, which was legal evidence, could have been introduced under the general plea.

The defendant offered and requested permission to file of record a paper which he styled a release from the Evangelical Association of North America to Adam H. Light. The refusal to permit this to be done constitutes the second assignment of error. If the defendant had a legal right to file the paper which he exhibited, the permission of the court was not necessary. If he had no legal right to file it, it was within the discretion of the court to permit or refuse. The release did not purport to be that of the plaintiff but that of a person entirely independent of the plaintiff who, as alleged, claimed the control of the property in the actual, legal custody and control of the plaintiff through the trustees who managed its corporate interests. As was well remarked by the court below, "The paper offered to be filed is a piece of evidence that may be offered on the trial but cannot be filed now, in order to make it evidence on the trial."

The third and fourth assignments of error relate to a release to the defendant from the Evangelical Association of North America, by John J. Esher, Bishop and a member of the litigating committee, offered in evidence, together with the authority for executing the release, and the circumstances attending the execution, together with an additional offer "to prove that these trustees, who instituted this suit, are not adherents of the Indianapolis Conference and are hostile to the Evangelical Association of North America, having withdrawn and having joined a new Association denominated as The United Evangelical Association of North America, and adhered to the Philadelphia Conference of 1891." These offers were severally rejected by the court "unless to be followed by evidence that there is a board of trustees and officers other than those already testified to for this corporation." Herein is the gist of this contention. The defendant did not offer to prove that there was in existence a board of trustees other than that which represented the plaintiff in this suit; indeed he distinctly alleges in the offer, the rejection of which is complained of in the seventh assignment of error, that "no trustees have as yet been ap-

pointed by the conference, which have authority to appoint them or the members who may have authority to appoint them." The suit, therefore, was instituted and maintained by the only legally constituted body having authority under the articles of incorporation to represent the plaintiff. They were admittedly trustees de facto and no effort had been made, so far as the offers of evidence disclose, to determine whether they were trustees de jure or not. "The courts will not, as a rule, investigate the regularity of the election or appointment of an officer of a corporation where the corporation itself and the shareholders do not question the agent's authority. Under these circumstances, ratification or acquiescence on the part of the corporation will be presumed; thus, if a suit is instituted on behalf of a corporation by its acting officers, the regularity of their appointment or election will not be investigated, if the corporation acquiesces in their action:" 2 Morawetz on Private Corporations (1886), sec. 639. If these trustees were using the name of the corporation for an illegal or illegitimate purpose or were exceeding their authority, this could have been shown in another proceeding; but the release offered and all the evidence, contained in the offers, included in the third and fourth assignments, did not tend in any way to controvert their title to the office or the right of the plaintiff to recover. The offers were properly rejected.

The offers contained in the fifth, sixth and seventh assignments of error were only another form of denying by indirection the authority of the trustees. They were also properly rejected. If the trustees, under whose direction this suit was instituted and has been maintained, had no legal right to represent the corporation in this regard, they could have been restrained and enjoined from further prosecuting the suit in a proper proceeding. If they fail to apply the amount of the judgment recovered in this case to the proper uses and purposes of the corporation which they represent, they can be held personally liable for such default or misfeasance. The defendant, however, having admitted that no trustees had been elected or appointed by the members of the church who he alleges have the right to elect them, cannot in our opinion question in this suit the power and authority of the trustees who were legally elected and who claimed to represent the corporation.

The questions determined and settled in Krecker v. Shirey, 163 Pa. 534, do not in any way enter into the consideration of this case. If this were a contest between the Evangelical Association of North America and the United Evangelical Association of North America as to the title to the church property, a very different question would be presented, but we cannot see that this enters into the consideration of the case in any aspect of it, and our decision of it rests upon the fact that the trustees, representing the corporation known as the Zion Church of the Evangelical Association of North America, being in possession of the church property which was burned by the negligence of the defendant, as admitted by him, and being the only trustees of the corporation, have the right to maintain this action in the name of the corporation which they represent, and to recover the judgment rendered in the court below.

The judgment is affirmed.